IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KAREN D. JACKSON,

Plaintiff,

vs. CASE NO. 1:15-cv-121-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

Defendant.

_______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability, disability insurance benefits and supplemental security income. (ECF No. 1.) The Commissioner has answered, ECF No. 6, and both parties have filed briefs outlining their respective positions. (ECF Nos. 9 and 10.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits (DIB), and supplemental security income

under Title II and XVI of the Social Security Act (the "Act") on October 31, 2011, alleging disability beginning July 6, 2010. (R. 150-55.) Her application was denied initially and upon reconsideration. (R. 83-95, 98-109.) Plaintiff then filed a timely request for an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 13, 2013. (R. 24-42.) The ALJ issued a decision unfavorable to Plaintiff on August 26, 2013. (R. 11-19.) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on April 20, 2015. (R. 1-4, 7.) Plaintiff filed the instant complaint on June 17, 2015, and the matter is now ripe for review.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

[3] *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] *Keeton v. Dep't Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] *Doughty*, 245 F.3d at 1278 n.2. In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[16] *Walker*, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Walker*, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] *Walker*, 826 F.2d at 1003.

[19] *Wolfe*, 86 F.3d at 1077-78.

evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF THE RECORD

### A. Medical History

Plaintiff's treatment history primarily concerns pain she experienced due to osteoarthritis in her ankles, left knee, left hip, and lumbar spine. Plaintiff does not have an established relationship with a physician who treated her over a period of time. Rather, the majority of Plaintiff's medical records are from visits to the emergency room.

Plaintiff sought treatment at Shands at UF Emergency Department in February 2009 with complaints of low back pain, which she described as throbbing. The physician's impression was acute disk bulge and acute low back pain. She was advised to follow up with her primary physician in three to five days. (R. 217-26.)

On January 23, 2009 Plaintiff was evaluated by John Hoehn, D.C. (a chiropractor). She complained of pain and stiffness in both sides of her neck, upper back, and lower back. Dr. Hoehn found that Plaintiff's range of

---

[20] *See id.*

motion of her cervical spine was moderately to severely restricted with pain, and she had neck pain. His impression was that Plaintiff had cervicalgia, cervical myalgia/myofascitis, thoracic spine pain, and thoracic myalgia/myofacitis. Plaintiff attended followup appointments for treatment with Dr. Hoehn through May 2011. (R. 227-38.)

Plaintiff went to the emergency room again on June 6, 2011. She reported that she had abrupt onset of pain in her lower lumbar spine. X-rays showed that she had mild lumbar scoliosis of the lumbar spine. Plaintiff was prescribed Lortab, 5 mg, Robaxin, 750 mg, and Motrin. (R. 240-54.)

Plaintiff went to the emergency room on August 25, 2010, with complaints that she felt dizzy and lightheaded. The physician's impression was a probable migraine headache and possible hypoglycemia. (R. 240-54.)

Dr. Robert A. Greenberg, P.A., performed a consultative examination on Plaintiff on December 26, 2011. Plaintiff reported a diagnosis of inflammatory arthritis at age fifteen in her left knee, feet, and lumbar spine. She had chronic swelling of her ankles and left knee, and severe pain in her left knee, feet, and lumbar spine, which made it difficult for her to bend

or lift. She reported to Dr. Greenberg that she could not stand or walk for longer than thirty minutes, nor sit for longer than one hour. The swelling caused her trouble sleeping and completing housework. Plaintiff used to take Vioxx, which helped, but it was taken off the market. Plaintiff reported currently using Ibuprofen, nine to ten tablets daily, with only mild relief.

Dr. Greenberg observed decreased range of motion of her lumbar spine, left hip, both ankles, and left knee. He noted that Plaintiff's left knee and ankles were severely swollen and painful to palpation and on range of motion. She had pitting edema (or swelling from her feet to knees) and decreased left leg strength. Plaintiff also had positive straight leg raise tests at 30 degrees. She had a "severe left leg limp" and was unable to tandem walk. Plaintiff could not walk on her heels or toes and could not stoop. Dr. Greenberg's impression was severe inflammatory arthritis of the ankles, left knee, left hip, and lumbar spine. (R. 257-59.)

Plaintiff next went to the emergency room on March 17, 2012, at North Florida Regional Medical Center. She reported abrupt onset of back pain that was constant, sharp, and dull. She also noted a rash on her foot. The straight leg tests were negative and she had normal range of motion on her extremities and no tenderness. The clinical impression was lumbar

radiculopathy. Plaintiff was prescribed Flexeril, Lortab, and Prednisone. (R. 267-70.)

Plaintiff went to the emergency room again on April 29, 2012, complaining of a lesion that started about a month ago on her foot which she said had become worse. She reported that this had happened many times before, but that it was usually milder and would scab over. Plaintiff also reported a history of an unidentified autoimmune disorder. The physician noted swelling around Plaintiff's foot. (R. 271-79.)

Dr. Greenberg completed a pain assessment for Plaintiff on March 5, 2013. Dr. Greenberg rated Plaintiff's pain as extreme, or 8 or more on a scale of 1-10. This pain is "virtually incapacitating" so that the patient could not perform most activities of daily living and could not work eight hours a day, five days a week. He stated that Plaintiff would have extreme limitations performing activities within a schedule and maintaining regular work attendance, and completing a normal workday and workweek without interruptions from pain. (R. 324-28.)

Dr. Greenberg also completed a Residual Functional Capacity Evaluation for Plaintiff. He opined that she could sit for thirty minutes to an hour at one time, could work at a sitting job for one to two hours a day, five

days a week, could stand for up to thirty minutes, and could work at a standing job for one hour per day, five days a week. He described Plaintiff's symptoms as decreased range of motion in her lumbar spine, left hip, both ankles, and left knee, a swollen left knee, severely swollen and painful ankles, and decreased left leg strength. Plaintiff had positive straight leg tests and a severe left leg limp. (R. 329-331.)

Plaintiff sought treatment at the emergency room for pain in March 2013. She was diagnosed with rheumatoid arthritis. The impression from radiology in March 2013 was extensive ankylosis, diffuse soft tissue swelling, and moderately severe arthritic disease. She had advanced degenerative changes in her knee and joint effusion, edema in her left and right lower leg and mild swelling on her left knee. Plaintiff had full range of motion. (R. 352-92.)

Dr. George H. Cockey, M.D., examined Plaintiff at North Florida Regional Medical Center on March 11, 2013. He found edema at Plaintiff's ankles, extensive ankylosis, diffuse soft tissue swelling, and moderate severe arthritis. Dr. Cockey stated that this caused Plaintiff minimal pain. (R. 372-73.)

**B. Hearing Testimony**

Plaintiff testified at the hearing that she became unable to work on July 4, 2010. Before that she worked as an administrative assistant for a juvenile detention center. She also was self-employed as an assistant. Plaintiff noticed her range of motion decreasing and increased fatigue, which eventually made working too difficult. As a result, Plaintiff testified that she had to quit her job.

Plaintiff described her arthritis as located in her right foot and ankle, left foot and ankle, left knee, and left hip. She stated that she could walk half a block before resting, could stand ten minutes before resting, and could sit twenty to thirty minutes before moving. She rated her pain due to arthritis as an average of five to seven. She said that normally she takes Ibuprofen, but when she has taken other pain medication, it has helped.

On an average day, she makes breakfast, takes Ibuprofen, does the dishes, sweeps, does laundry, watches television, and helps prepare dinner. Plaintiff is able to drive and drives herself to doctor's appointments. She is able to attend to her personal care and hygiene needs. She said that she does not do any grocery shopping. She testified that normally she sleeps well—six to eight hours a night—but she has some nights where the

pain affects her sleeping. She spends a lot of her time lying down with her feet elevated to prevent swelling. (R. 24-42.)

### C. Findings of the ALJ

The ALJ determined that Plaintiff had the severe impairments of osteoarthritis of the ankles, left knee, left hip and lumbar spine. He concluded, however, that her impairments—singly and in combination—did not meet or medically equal the severity of a listed impairment. He determined that Plaintiff had the following residual functional capacity:

> "Sedentary work [ . . . ] except the claimant is limited to occasional ramp and stair climbing; no ladder, rope, or scaffold climbing; occasional balancing; no kneeling; no crouching; and no crawling. The claimant must avoid concentrated exposure to extreme cold and heat, wetness/humidity, vibrations, work around moving mechanical part [sic], and work at unprotected heights." (R. 15.)

Based on this residual functional capacity assessment ("RFC") the ALJ determined that Plaintiff was able to perform her past relevant work as an administrative assistant. The ALJ concluded that because Plaintiff was able to perform her past relevant work she was not disabled.

## IV. DISCUSSION

Plaintiff raises two arguments on appeal. First, Plaintiff argues that the ALJ failed to give proper weight to the medical source opinion of Dr.

Greenberg, who performed a consultative examination. Second, Plaintiff argues that the ALJ's credibility assessment violated the Eleventh Circuit pain standard. The Court will address each of Plaintiff's arguments below.

**A. The ALJ's Assessment of the Medical Opinion Evidence**

Plaintiff argues that Dr. Greenberg, in his RFC Assessment and pain questionnaire, described Plaintiff as unable to work based on his examination. As discussed in the summary of the record, Dr. Greenberg opined that Plaintiff could only sit for less than an hour, could only stand for up to thirty minutes, and could only work at a job while sitting for up to two hours a day. He rated Plaintiff's pain as extreme, or virtually incapacitating. Plaintiff argues that the ALJ did not give proper weight to the findings of Dr. Greenberg, whom she says, was the only physician to examine Plaintiff and render opinions.

Dr. Greenberg was not a treating physician but rather simply provided a consultative examination. The difference is important because the opinion of a consultative examiner, unlike the opinion of a treating physician, is not entitled to any special weight or deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). While the ALJ may reject the opinion of a physician when the evidence supports a contrary conclusion,

the ALJ is required to state the weight he gives to each opinion and the reason why. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

Dr. Greenberg became involved because Plaintiff did not have consistent treatment from a treating physician over a period of time. As discussed above, the majority of Plaintiff's medical records consist of various emergency room visits due to pain and random assessments by various physicians. To obtain a more complete record, the ALJ directed Plaintiff to submit to a consultative examination by Dr. Greenberg.

The ALJ gave little weight to Dr. Greenberg's conclusion that Plaintiff could not perform sedentary work. As support for this finding the ALJ articulated several reasons. First, the ALJ noted his concern that Dr. Greenberg relied too heavily on Plaintiff's subjective reports of her symptoms, which were not supported by the medical record.

Second, the ALJ relied upon the fact that the medical evidence did not contain the type of significant clinical and laboratory abnormalities that normally would be present for an individual as limited as opined by Dr. Greenberg. For example, the ALJ pointed out that an emergency room visit for Plaintiff in December 2011 showed that her extremities had a

normal range of motion and no lower extremity edema. Notably, during that visit Plaintiff had no motor or sensory deficits. (R. 239-54.) Additionally, in an examination by Dr. George Cockey in March 2013, prompted by Plaintiff's complaints of joint swelling in her ankles, the notes documented that Plaintiff had only minimal pain. (R. 372-73.) During this examination Plaintiff was able to move all of her extremities and walk independently. (R. 438.)

Furthermore, emergency room records from North Florida in May of 2013 demonstrated that Plaintiff was able to move all of her extremities and ambulate independently with no edema present. (R. 432-38.) Although Plaintiff lacks consistent, recurring treatment with one physician, the medical records from the treatment that Plaintiff did receive do not support Dr. Greenberg's opinion that Plaintiff had consistently incapacitating pain.

The ALJ also relied upon Plaintiff's testimony of activities of daily living in concluding that Dr. Greenberg's opinion should be given little weight. Plaintiff testified that she is capable of performing a variety of daily activities, including doing the dishes, doing the laundry, sweeping, watching television, and preparing dinner. Plaintiff is able to drive herself

to doctor's appointments and attends to her personal care and hygiene needs. The ALJ concluded that this level of activity does not comport with Dr. Greenberg's assessment that Plaintiff cannot work.

Finally, the ALJ considered and relied upon the medical opinion of the State agency medical consultant, to which the ALJ assigned great weight. Although this type of opinion, by itself, is entitled to little weight—*Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)—the ALJ may properly rely on the opinion of a reviewing physician when the opinion is consistent with the evidence as a whole. *See Gill v. Colvin*, No. CV-13-S-415-NE, 2013 WL 6191581 (N.D. Ala. Nov. 26, 2013)(stating that the ALJ may assign more weight to the opinion of a State Agency reviewing physician than the opinion of a treating physician if the State Agency opinion is more consistent with the evidence as a whole). As the Social Security regulations provide, the ALJ should consider the State Agency medical consultant to be both "highly qualified" and an "expert" in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. § 416.927(e)(2)(i).

The State Agency medical consultant, Glenn Bigsby, D.O., reviewed Plaintiff's medical records and determined that Plaintiff could perform

sedentary work, with limitations. (R. 63-71, 72-80.) Because Dr. Bigsby's opinion was consistent with the Plaintiff's medical record (other than Dr. Greenberg's opinion), the ALJ did not err in affording the opinion considerable weight.

**B. The ALJ's Credibility Determination**

Second, Plaintiff argues that the ALJ violated the Eleventh Circuit's three-part pain standard. According to Plaintiff, the ALJ's lack of analysis regarding her credibility, in light of the assessment by Dr. Greenberg, does not comport with the pain standard.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *See Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined

medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. *Id*. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's

statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding. *See Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id*. at 1562. The ALJ's articulated reasons must also be supported by substantial evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532 (11th Cir.1991). The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562. The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is critical to the outcome of the case. *Id.*

In this case, the ALJ did not err in assessing Plaintiff's credibility, and

a review of his decision shows that the ALJ appropriately applied the pain standard.

The ALJ first determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 16.)

Consistent with the Eleventh Circuit pain standard the ALJ then discussed the medical evidence the ALJ concluded contradicted Plaintiff's allegations of pain. For example, the ALJ pointed out that x-rays of Plaintiff's lumbar spine, performed in June 2011, displayed only "mild lumbar scoliosis." The ALJ also referenced Plaintiff's December 2011 examination, during which Plaintiff exhibited normal range of motion in her arms and legs, no edema in her legs, and no motor or sensory deficit. Further, the ALJ pointed to a March 2012 examination, in which the notes reflect that Plaintiff only had moderate vertebral point tenderness over her lower lumbar spine, and no point tenderness in her mid lumbar spine. While Plaintiff exhibited soft tissue tenderness in the right lower lumbar areas, she, nonetheless, had a normal range of motion of extremities, and

had a negative straight leg test at the same examination.

The ALJ also discussed and considered Dr. Cockey's examination in March 2013 during which Plaintiff only had minimal pain even though she had joint swelling in her ankles. Additionally, in May 2013, Plaintiff's examination showed that she could move all extremities, ambulate independently, and had no edema.

Lastly, the ALJ considered and relied upon Plaintiff's activities of daily living when evaluating the credibility of her complaints of pain. As previously discussed, Plaintiff was able to care for herself, drive to doctor's appointments, do the dishes, do laundry, sweep, watch television, and cook. The only activity that Plaintiff said she had difficulty performing was grocery shopping.

In sum, the ALJ's decision informs the Court in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that Plaintiff's complaints were only partially credible as to the intensity, persistence, and limiting effects. The ALJ's credibility finding is supported by substantial evidence and therefore will not be overturned by the Court.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the decision of the Commission should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida this 21st day of June 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge